**NATIONAL FIRE INS CO v WAGNER et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1370. Decided May 14, 1936

Mooney, Bibbee & Edmonds, Columbus,
Matthews & Matthews, Dayton, for plain-
tiff in error.

McMahon, Corwin, Landis & Markham,
Dayton, Samuel S. Markham, Dayton, and
Irvin G. Bieser, Dayton, for defendant in
error.

## STATEMENT OF FACTS

By BODEY, J

This is an error proceeding from the Common Pleas Court. The defendant in error, Francis A. Wagner, trustee, was plaintiff below and the other parties to this error proceeding were defendants below. We will refer to the parties as they appeared in the lower court.

In his petition the plaintiff alleged in substance that on January 26, 1931 the defendant insured him against loss or damage by fire or lightning in the fixed amount of $20,000.00 for one year upon four brick buildings located · at 227 to 239 East First Street, Dayton, Ohio; that in its policy of insurance issued to plaintiff the defendant, with full knowledge of the physical facts which it had obtained by a detailed survey made of said premises, but contrary to law, inaccurately described said group of four buildings as 'a five story approved roof brick building;' that as a result of the detailed survey of its agent the defendant had placed an insurable value upon one of said buildings, which was totally destroyed by fire, of $64,875.00; that, at the time of said loss, plaintiff held said policy in good faith as one of indemnity against loss by fire upon each of said four brick buildings; that said fire loss was settled by plaintiff and defendant, Insurance Company, upon the basis of a partial loss with a view toward utilizing the standing portion of said buildings in its reconstruction; that after said loss had been adjusted as partial, the plaintiff learned that the portion of said building remaining was unsafe and unsound and was a hindrance to any program of reconstruction; that, therefore, said loss was a total loss and plaintiff was entitled to an additional payment from said defendant on account thereof in the sum of $2880.15, for which amount he prayed judgment.

To this petition the defendant, Insurance Company, filed an answer in which it made certain admissions in its first defense, but in which it denied by way of general denial the allegation of misdescription and all allegations concerning a failure to adjust loss in conformity with the terms of the policy and the law. In its second defense this defendant pleads an accord and satisfaction, specifically setting forth the receipt of the sum of $8876.58 by the plaintiff in adjustment of said loss. In its third defense the defendant pleads its release and discharge from further liability under this policy by reason of the written release executed to it by the plaintiff.

To this answer the plaintiff replied and thereby denied all of the allegations of the answer which were inconsistent with his petition, denied that the fire loss was partial and denied that there had been any accord and satisfaction or any release of his claim against said Insurance Company on account of total loss.

On the issues thus made trial was had to a jury which returned a verdict for plaintiff for the full amount claimed. A motion for new trial was filed and overruled. Judgment was rendered on the verdict. This is the final order which the plaintiff in error now seeks to reverse.

## OPINION

By BODEY, J.

The evidence shows that the plaintiff was trustee of an express trust and that as such he was the owner of the building or structure in question; that said building or structure was located at the northwest corner of East First Street and Patterson Blvd. in the City of Dayton; that said building or structure, according to plaintiff's plat, consisted of four sections each of which had separate walls and foundations, as follows: Section A extended west on First Street and North on Patterson Blvd.; Section B was about twenty-five feet north of Section A and was connected with Section A at the fourth story by a bridge approximately twenty-five feet in length; Section C was connected with Section B and lay immediately west thereof and was connected with Section D which would be in line with the west wall of Section A extended northwardly; Sections A and C were not connected in any way but were separated by an area of perhaps twenty-five feet in width; Section D fronted on East First Street, extended North and was connected with Section A on its west and with Section C on its west; there were six openings between Sections D and A; this plant had formerly been operated as one concern by plaintiff's predecessor in title and it was possible to go from one section into another by following the various openings between A and B, B and C, C and D, and D and A; a driveway which was one story in height separated Sections A and D; Sections A and D were five stories high

while Sections B and C were only four stories in height; four stories of Section A at the west side thereof were built over said driveway; the fire was confined generally to Section A, slight damage being done to Sections B and D; the four walls of Section A remained standing after the fire; under the terms of the policy as issued, settlement was made as a partial loss to the whole; five other policies, similarly written, were held by plaintiff; all policies totalled $100,000.00; this figure represented 90% of the sound value of said plant which was fixed at $112,843.00.

The questions involved have been comprehensively briefed by counsel on each side.

In passing upon the rights of the parties we must construe the valued policy law of Ohio which is found in §§9583 et seq GC. §9583 GC reads as follows:

"A person, company or association insuring any building or structure against loss or damage by fire or lightning, by renewal of a policy, shall cause such building or structure to be examined by his or its agent, and a full description thereof to be made, and its insurable value fixed, by him. In the absence of any change increasing the risk without the consent of the insurers, and also of intentional fraud on the part of the insured, in case of total loss, the whole amount mentioned in the policy or renewal upon which the insurer received a premium, shall be paid."

It was held in the case of **Insurance Company v Leslie, 47 Oh St 409,** that this Statute is founded upon considerations of public policy and that the Statute 'cannot be regarded as conferring upon the assured a mere personal privilege which may be waived by agreement.' In referring to the Statute the court says:

"Nor do we think the operation of the Statute can be defeated, by the neglect of the agent to make the examination, or fix the insurable value of the property, as it requires. The duty of the company is to obey the law, and its disregard of that duty can give it no greater rights than the observance of it would."

The court further says:

"It moulds the obligation of the contract into conformity to its provisions, and establishes the rule and measure of the insurer's liability."

It will thus be seen that the Statute enjoins a positive duty upon the agent of the insurer. The insured may not waive any of the provisions required to be fulfilled by the agent. By the provisions of §9586 **GC,** the agent soliciting the insurance is deemed to be the agent of the insurer. With these sections of the Statute before us and the interpretation which has been placed on §9583 **GC** by the Supreme Court, we inquire whether or not the agent of the Insurance Company in the case at bar discharged his obligations under the Valued Policy Law when he took the application and whether or not the company discharged its obligation thereunder when it issued the policy as written. It will be noted that the duty to fix a separate and definite insurable value develops upon the agent and the company which he represents only when it insures a **building or structure.** The undisputed evidence shows that Sections B, C, and D of this plant were intact after the fire and were only slightly damaged and that the fire was confined to Section A. The evidence showed that Section A was a building which had been constructed after Section D had been erected, and that, aside from the openings into Section D, it was a complete building with four separate walls and a roof. The word 'building' is defined in Webster's New International Dictionary as "a fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose." The same authority defines 'structure' as "something constructed or built, as a building, a dam, a bridge; esp., a building of some size; an edifice." In drawing a distinction between the terms 'building,' 'edifice' and 'structure,' this authority says that they agree in meaning but differ slightly in application. By way of illustration the author says: "Building is the common, and in most cases the adequate, term; edifice usually applies to large and elegant buildings only; structure retains more frequently than the others the sense of something constructed, often in a particular way; as, a tumbled-down structure, a modern steel structure. Like edifice. structure is often used of buildings of some size or magnificence." Although Section A was constructed at a later period than Section B, the fact that all of the Sections were connected and could be and had been used as one complete plant and were under one ownership is most persuasive that all of the sections together could be

construed as a structure under the foregoing definition.

It was plaintiff's theory, and this was adopted by the trial court, that, under the provisions of §9583 GC it was the duty of the agent of defendant if his examination of the premises of plaintiff disclosed that there were four buildings, to separately describe each of the four buildings or four sections and, thereupon, to place upon each building or each section an insurable value. The trial court quoted to the jury §9583 GC, supra, and §§9584 **and** 9586 GC inclusive, and said to the jury:

"You will next determine whether or not the premises insured by the defendant, National Fire Insurance Company, constituted one building or structure or a group of separate buildings. You will consider all the evidence upon this subject submitted by both the plaintiff and the defendant and determine as a question of fact whether or not the premises thus insured is a single building or structure or a group of separate buildings. If you fail to find by a preponderance of the evidence that that portion of the insured premises referred to as building "A" is a separate building or structure, then your verdict must be for the defendant, National Fire Insurance Company and against the plaintiff. * * * If that part of the insurable premises referred to as building "A" was a separate building or structure within the terms of the valued policy Statute heretofore read to you, then it was the duty of the defendant, National Fire Insurance Company, to have had such separate building or structure examined, its insurable value fixed or stated in the policy and a full description thereof given in the policy. * * * If that portion of the insured premises referred to as building "A" was a separate building or structure, and that fact was known by the defendant, and was totally destroyed, then the plaintiff under §9583 GC known as the valued policy law would have been entitled to have been paid the entire amount for which such building should have been separately valued and for such amount of that value as the defendant, National Fire Insurance Company, insured said building. * * * If you find by a preponderance of the evidence that that part of the insured premises known as building "A" .was totally destroyed and that said part of the insured premises was a separate building or structure, and that the defendant, National Fire Insurance Company, did not fix an insurable value on such premises and give a full description thereof in the policy it executed and delivered to the plaintiff, then your verdict will be for the plaintiff and against the defendant, National Fire Insurance Company."

It is our opinion that §9583 GC was passed by the Legislature in order that the risk assumed and the amount which would be payable in case of total loss might be definitely agreed upon between the insurer and the insured at the time of the issue of the policy. As stated in the case of Insurance Company v Leslie, supra, its purpose was "to exact diligence and care on the part of the Insurance Company to avoid improper risks and over insurance, by requiring them to cause their agents to make personal examination of the property, a full description thereof, and fix its insurable value, as well as to protect the insured against unreasonable forfeitures and defenses." No cause has been cited to us, nor has any case been found by our independent investigation, which goes to the extent of holding that under a valued policy Statute the agent of the Insurance Company must place in the policy a description of the building or structure insured in accord with the desire of the insured. It is our conclusion from an examination of the authorities that the entire purpose and intent of §9583 GC is fulfilled when an agent of a Fire Insurance Company says to a prospective insured that the company will insure a certain building or structure for a certain fixed amount. A policy of insurance is a contract between the insurer and the insured. We know of no law which prohibits the insured from agreeing with his insurer that the various sections or units of a building may be considered as one unit or one building for the purposes of insurance. We are unable to read into §9583 GC a construction which would prohibit such a contract. As applied to the case at bar, it is our view that the plaintiff and the defendant could contract that Sections A, B, C and D should be considered as one building or structure and that the entire duty of the defendant under §9583 GC would have been discharged under such a contract when it had its agent examine the said sections as a whole and place thereon an insurable value as such. The trial court, as appears from the excerpts of the general charge above quoted, was of the opinion that parties could not so contract and that if Sections A, B, C, and D were in fact separate buildings or structures, then the plaintiff was entitled to re-

cover as a matter of law. As already indicated, this court holds that the character of the risk in this case was subject to contract between the parties. It follows that the court erred to the prejudice of the defendant in the giving of this general charge.

What was the contract of the parties? Was it expressed in the policy as written or was the contract one of separate insurance upon each section or unit? Plaintiff alleged in his petition that the agent of the defendant had placed a separate insurable value of $64,875.00 on Section A and that in good faith he held the policy of defendant as one of indemnity upon each of his four buildings. In support of this allegation the plaintiff testified that separate values had been established on the several sections of his premises, that he had made a copy of these values from a memorandum which the agent of the defendant had in his possession, that the sound value of Section A was 90% of $64,-875.00 and that such values formed the basis upon which the insurance was to be placed on Section A as well as the other three sections of the plant. Plaintiff was also permitted to testify to the effect that he had not read his original policy nor the policy herein sued upon which was a second renewal of the original. This testimony was admitted in support of the allegations of the petition that there was a misdescription or inaccurate description of the premises set forth in the policy as issued. Under the theory adopted by the trial court to the effect that it was the duty of the agent of the defendant under the Valued Policy Law to place a separate value upon each building or structure, this evidence was competent to go to the jury. However, since we hold that the parties could contract concerning the subject of their insurance, it would follow that such testimony would only be competent and relevant in an equity action to reform the policy. After the jury was impaneled and after the opening statements of counsel had been made, counsel for the defendant moved that the court sit as one 'in equity without the intervention of a jury and try and determine the issues as to any claimed inaccuracy in the description in the policy sued upon of the property covered and as to any claimed mutual mistake in reduction of the policy sued upon." The trial court overruled this motion. We hold that this was error. Under our form of code pleading it is proper and expedient to join

a cause of action for reformation of an instrument and one for recovery on the instrument in the same petition. The Supreme Court so held in the case of **The Globe Insurance Company v Elizabeth W. Boyle et, 21 Oh St, 119.** It may be noted in passing that the action in that case was based upon an insurance policy. The petition in the instant case, under the authority just referred to, is a proper one. Before submitting to the jury the question of the amount of recovery to which the plaintiff might be entitled, the court should have determined in equity whether or not by mutual mistake of the parties the policy did not describe plaintiff's premises as contemplated. If there was no mutual mistake in the description of the property insured, there being no charge of fraud, then the plaintiff was not entitled to recover in this case. Whether or not a mutual mistake did exist was a question to be determined by the court. In the case of **The Humboldt Fire Insurance Company v The R. K. LeBlond Machine Tool Company, 96 Oh St, 442,** the court had under consideration a petition in which the plaintiff sought to reform an insurance policy and to recover upon the reformed policy in the same action. After quoting §9586 GC, the court, in its opinion, says:

"In the negotiation leading up to the making of the contract the agent had such incidental power as was necessary to carry his authority into effect, and if by the mutual mistake of the agent and the insured the word "building" was used when the parties intended to use the word "Buildings," the mistake of the agent was the mistake of the Company, and, the mistake being mutual, ·the insured is entitled to have the contract reformed so as to state the truth and conform to the intention of the parties."

Counsel for plaintiff have cited 66 A.L.R., 767, in support of their contention that no reformation of the policy is necessary in order to permit a recovery thereon. The cases of **Walrath v Royal Insurance Company, 16 C.C., 413 and Harris v Aetna Insurance Company, 1 Cin. Sup. C. R. 361,** are also cited. In each of the Ohio cases the court permitted a recovery without reformation, it having been found as a fact that the description contained in the policies covered the property which was destroyed. We do not find that any of the cases referred to in 66 A.L.R., 767, go to the extent of holding that a reformation is unneces-

sary when the plaintiff seeks to have the premises actually insured by the policy designated by a description different from that set forth in the policy. In all of those cases, the facts disclose that there was no mistake concerning the property which was insured but that its location or character was inaccurately fixed. In the case at bar the defendant insured the property which the plaintiff expected it to insure but it is contended that the property was misdescribed. It seems to us that the practice followed in the case of The Humboldt Fire Insurance Company v The R. K. LeBlond Machine Tool Company, supra, is more advisable, that the trial court should have followed the procedure adopted in that case, and that it should have sustained defendant's motion that it sit as a court of equity in the disposition of this preliminary question.

We do not believe that the court erred in refusing to sustain defendant's motion that it sit as a court of equity and try and determine the issues as to the validity of the contract of accord and satisfaction and release. The cause of action here sued upon was one for a total loss. The accord and satisfaction and the release had been executed upon the theory that the loss was partial. We see no good reason to hold that the court should first hear and determine the question of whether or not these instruments were valid. It was not denied that they were full releases for plaintiff's partial loss. The fact that they were valid as such would not make them valid as releases for a total loss.

Counsel for the defendant strenuously contend that the undisputed evidence shows that there was only a partial loss on Section A, and that, therefore, the verdict should have been for the defendant in any event. We believe that there is creditable evidence in the record tending to establish that Section A had been so far destroyed as to lose its identity as a building and that the question of total loss was one of disputed fact. No error was committed when the trial court overruled the motions of defendant based upon this claim.

Counsel for the defense called as a witness Morris V. Bickel, who was an inspector connected with the Ohio Inspection Bureau, of which Bureau the defendant, Insurance Company, was a member. Through this witness the defendant offered testimony of the protection which was afforded to various sections of plaintiff's building by the fire doors which were erected. In his testimony he referred to some of these doors as "non-standard." The court sustained an objection to this testimony and also to further testimony in which the witness was asked to describe a standard fire door. The witness was permitted, however, to testify that the entire building, meaning all sections thereof, constituted one fire area. The purpose for which the testimony was offered was to establish the fact that since some of these openings were not protected by approved standard fire doors, the rating bureau could only fix one rate for the various connecting sections of the building and that for insurance purposes all sections must be included as one building or one structure. It seems to us that this testimony and this evidence should have been admitted under the theory adopted by the court in view of the fact that the defendant, Insurance Company, was bound to abide by the Statutes creating the Rating Bureau in Ohio. These Statutes are §§9592-1 to 9592-16, GC, inclusive. It is true, as stated by the trial court, that the Rating Bureau is not empowered to determine what is or what is not a building or a structure. However, under these provisions, every Company in Ohio insuring against loss by fire or lightning, must maintain, or be a member of, a Rating Bureau, for the purpose of rating every risk assumed by it. These Statutes further provide that the Bureau shall inspect every risk specifically rated by it upon schedule, shall make a written survey of such risk, that the result of said survey shall be filed as a permanent record in its office, and a copy thereof furnished to the owner upon his request. These sections provide also for the imposition of a penalty upon any insurer who violates any of their provisions. In other words, an insurance company, insuring against loss by fire or lightning, must obtain its rate on each particular risk from the Rating Bureau of which it is a member and it must charge a rate as prescribed by that Bureau upon the particular risk which it takes.

The testimony of the witness, Bickel, tended to rebut that already offered by the plaintiff and the witness, Dickman. It was competent for that purpose. It might also be relevant as bearing upon the probability of the existence of a mistake in the writing of this insurance policy, as claimed by the plaintiff, when, as shown by the records of the Rating Bureau, all openings were not protected by standard fire doors and the premises insured constituted a single fire area. If the case is tried by the

court on the question of reformation of the policy, such evidence may or may not be helpful to the trial court in determining whether or not there was a mutual mistake made by the parties in describing the premises insured. .

We find no error in the giving of plaintiff's special instructions Nos. 1 and 2 under the theory of the trial court. However, the court committed prejudicial error in giving Request No. 3. Under our construction of the Valid Policy Law, the court should not submit to the jury for its determination the issue of whether there were four buildings or one building insured by the defendant.

Since we have held that the court should have sustained defendant's motion made at the beginning of the case that it sit as a court of equity and determine plaintiff's right to reformation, it follows that no error was committed when the trial court overruled the motions for a directed verdict.

Since the defendant owed the plaintiff that amount of money for which settlement was effected on the ██ basis of partial loss, defendant was not required to tender back when this action was instituted. **Bebout v Bodle, 38 Oh St 500; Kelley et v Hazzard et, 96 Oh St, 19.** The trial court was not in error when it held against defendant on this claim.

We are of opinion that the court erred in fixing the date at which interest would begin to run on the · judgment.

It is our view that interest should only be computed from the time that the defendant was placed in default by plaintiff's demand for a further adjustment. This demand was made February 20, 1932 and interest upon any judgment rendered against the defendant should be figured from that date.

We have examined all of the errors assigned in the brief. Aside from those to which attention has been directed we find none which are prejudicial. For these prejudicial errors which do appear, however, the judgment of the lower court must be reversed and this cause remanded with instructions to the lower court to first determine in equity if the plaintiff is entitled to a reformation of his contract of insurance. An entry may be drawn accordingly, saving exceptions as desired.

HORNBECK, J, concurs.

By BARNES, PJ.

It is my judgment that the trial court erred in not directing a verdict in favor of the defendant on the motions first interposed at the end of plaintiff's testimony and renewed after all evidence was presented.

By reason of this ground of error final judgment should be entered by this court.

I agree fully with the majority opinion that §9583, GC, generally spoken of as the Valued Policy Law of Ohio, is fulfilled through the agent of the insurance company fixing the insurable value of the insurance risk. Further, that the section can not properly be construed as containing the legal requirement that different units of a structure must be insured separately, even though it be shown that the separate units were built at different times and each was constructed as a complete building with separate foundations and walls.

When this conclusion is arrived at in the majority opinion, I am unable to see where anything remains in plaintiff's case when we consider the entire record in connection with the pleadings.

The order of remand in the majority opinion directs that the trial court, sitting as a court of equity, first determine whether or not the contract of insurance should be reformed so that each of the four separate units comprising the structure would have separate sound values and in effect be insured separately. I agree with the proposition that the insurance policy in a proper case may be reformed for mutual mistake of facts or for fraud, but from a careful examination of the record I am unable to find that this question is presented. Nor does plaintiff's petition, when the legal claims are eliminated, present any right for reformation on the grounds of mutual mistake or fraud.

In other words, as I read the petition it bases its claim for separate insurable value of the four units on counsel's construction of the law that this is required under the provisions of §9583 GC, supra. Nowhere in the petition do we find any direct allegation nor any allegations of fact from which the conclusion may be inferred that plaintiff makes the claim that there was any agreement between the insurer and the insured that the separate units were to be insured separately.

The nearest approach to raising this issue is presented in the evidence wherein the plaintiff, Francis A. Wagner, trustee, testifies in effect that the agent of the insurance company procured the services of a contracting and realty company to make

the appraisal before the insurance policy was issued, and that such company made its appraisal by separate units. The appraisal on the separate units was then totalled, making a present day valuation for all buildings of $112,867.00. We now quote from plaintiff's petition:

"And that such agent fixed and determined separately the insurable value of each of the four buildings comprising the group of buildings to be so insured which aggregate value of $112,843.00 furnished the basis for insuring said buildings, under a ninety per cent (90%) co-insurance clause attached to the policy thereafter executed and delivered by this defendant, as well as the other five (5) policies of insurance concurrently issued by five other fire insurance companies."

The 90% figured a little less than $100,000.00, but it was agreed that the total insurance would aggregate $100,000.00, of which the present defendant issued a policy for $20,000.00. The first policy was issued and delivered to plaintiff in January, 1930, for one year. The plaintiff testifies that in January of 1931 a new policy was issued on the same terms and conditions and in January 1932 a second renewal on the same terms and conditions. The fire occurred in August, 1932. The major damage was to what has been designated as Unit A. One or two other units were slightly damaged. After the fire plaintiff presented his proof of loss, and after about two months the amount of loss was agreed upon and paid. Contemporaneously with the payment, plaintiff returned his policy to the insurance company.

I am unable to find anywhere in the evidence where there was any attempt made to show that there was a mutual mistake in insuring the entire structure as one insurable risk instead of separate units, nor am I able to find any claim of fraud.

In the majority opinion reference is made to the fact that after the trial statement counsel for the defendant moved that the jury be excused and the court sit as a court of equity, and determine the question of reformation. This motion was overruled. Had the court sustained the motion, defendant then could not have complained of a procedural step taken at the instance of defendant, even though the pleadings were not in such form as to properly raise the question. The fact that the defendant interposed such a motion does not require this court to remand with instructions to determine the question of reformation, if it is not properly presented through the pleadings, or the issue raised by some evidence in the record.

Even though plaintiff through his pleadings or evidence made the claim that it was agreed that he was to have a policy showing separate insurable values on each unit, it would not be sufficient unless it would be shown that the agent of the insurance company so understood and agreed. The law is well recognized that reformation can only be made when there is a mutual mistake or fraud.

I am also of the view that consideration should be given to §§9592-1 to 18 GC, inclusive. These sections deal with a Rating Bureau required to be maintained to regulate rates and risks. Every insurance company transacting business in Ohio is required to be a member of such rating bureau, and penalties are prescribed for failure to observe the conditions and provisions. Every owner of property is entitled to a copy of survey upon request. The evidence discloses that the Rating Bureau listed the several units as one insurance risk and fixed the insurance rate thereon. While the provisions of this act are not as clear or definite as they might be, yet in my judgment the insurance company was bound to insure it as one risk, as listed by the Rating Bureau. The provisions of this act are binding upon the insurance company and owner alike. Had it been desired to insure the units separately, it would have been necessary to have procured from the Rating Bureau a separation of the risk and a rating on each separate unit.

In the absence of statute, the parties would have a right to contract as they saw fit. Every statutory provision regulating insurance contracts is read into the policy as a part thereof, regardless of its language.

I also think that this court should enter final judgment under the issues raised in the second and third defense of defendant's answer. These defenses raise the question of accord and satisfaction or settlement. The evidence is undisputed that after the fire plaintiff presented his proof of loss and that thereafter a settlement was agreed upon and payment made. At that time no question was raised to the effect that the policy of insurance did not correctly state the contract. Plaintiff agreed to the settlement with full knowledge of all facts. If the question of reformation is properly in the case, it could only be said that it settled under a misapprehension of the law. This is not a ground for opening up and bringing an action for an additional amount.

Plaintiff raised no question about the settlement for many months thereafter and even then did not question the contract of insurance, but made the claim that the damage to the walls of Unit A was greater than he thought when he made settlement. The opportunity to determine this fact was available to plaintiff and defendant alike. After settlement is made, the same can not be opened up except on the ground of fraud.

In my judgment this rule is likewise applicable, even if it could be determined that plaintiff was entitled to reformation. Under such a situation it would have to be said that he settled under a misapprehension of law and not under any misapprehension of facts as to the terms of his contract.

For the reasons stated I am constrained to hold to the view that this court should render final judgment in favor of defendant.